IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JASON T. GATLIN,

      Plaintiff,

v.                                                              No. 21-cv-00680 RB/JHR

CORECIVIC, INC., (f/n/a Corrections
Corporation of America), and CENTURION
CORRECTIONAL HEALTHCARE OF
NEW MEXICO, L.L.C.,

      Defendants.

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jason Gatlin was incarcerated at the Northwest New Mexico Correctional Center (NNMCC). Gatlin alleges that he broke his foot and filed four grievances between May and August 2017, but Defendants CoreCivic, Inc. and Centurion Correctional Healthcare of New Mexico, L.L.C. failed to adequately treat his injury. On January 30, 2020, Gatlin filed a complaint in New Mexico state court, asserting nine claims under federal and state law. The state court dismissed the complaint on January 25, 2021, for lack of prosecution. Gatlin moved to reopen the case on March 30, 2021, and served Defendants on June 23, 2021. Defendants now move to dismiss Gatlin's Complaint for insufficient service of process. CoreCivic also moves to dismiss on the basis that Gatlin fails to state any claim. The Court finds that because Gatlin failed to use reasonable diligence in serving Defendants, his Complaint shall be dismissed.

**I.    Statement of Facts**

Gatlin was an inmate at the NNMCC.[1] (*See* Doc. 1-A (Compl.) ¶ 4.) He asserts that

---

[1] Gatlin identifies the facility as Northwestern New Mexico Correctional Facility. (*See* Doc. 1-A (Compl.) ¶ 4.) CoreCivic clarifies that the correct name of the facility is the Northwest New Mexico Correctional Center (NNMCC).

Defendant CoreCivic contracts with New Mexico to operate the NNMCC. (*See id.* ¶¶ 22, 24.) He further asserts that CoreCivic is "responsible for providing medical care to inmates at [the NNMCC]" and "contracted those medical services to Defendant Centurion . . . ." (*Id.* ¶ 5.)

Although he does not describe how he was injured, Gatlin incurred a broken foot while incarcerated. (*See id.* ¶ 38.) He filed four grievances. (*See id.* ¶¶ 37–41.) The relevant factual allegations are as follows:

> Upon information and belief, Defendant Corecivic lost the first grievance filed on May 28, 2017 by Defendant [sic] Gatlin, where he reported and/or documented a failure to treat.
> Defendant Corecivic allowed Plaintiff Gatlin to continue suffering with a broken foot after his second grievance filing on June 27, 2017.
> Despite knowing of the risk of none-treatment [sic], Defendant Corecivic failed to address the grievances filed by Plaintiff Gatlin and once seen by Defendant Centurion, its employees only ordered cold compresses. Defendant Centurion did not order x-rays and placed a cast on his leg until three days later when Plaintiff Jason Gatlin passed out and fell from pain.
> On or about July 13, 2017, Plaintiff Gatlin filed another grievance concerning the lack of medical treatment at [NNMCC] for concerns with his broken foot.
> On or about August 17, 2017 Plaintiff Gatlin filed another grievance because Defendant Centurion had not followed up with Plaintiff Gatlin after placing a cast on his leg.

(*Id.*)

Gatlin avers that "Defendants had a policy and practice or trade of deliberate indifference to the reality of physical injury of prisoners/inmates which proximately caused [him] harm." (*Id.* ¶ 10.) He further asserts that "Defendants are liable for the acts and omissions of [their] employees" and "for their own negligent policy making; their failure to establish adequate guidelines to place inmates on work detail; their failure to adequately train; and their failure to adequately staff their work crews." (*Id.* ¶¶ 12–13.)

---

(Doc. 4 at 2.) *See also Northwest New Mexico Correctional Center*, https://www.corecivic.com/facilities/northwest-new-mexico-correctional-center-formerly-new-mexico-women-s-correctional-facility (last visited Jan. 28, 2022).

Gatlin brings the following nine claims against both Defendants:

Count I: Deprivation of Civil Rights under the Eighth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983. (*Id.* ¶¶ 43–51.)

Count II: Substantive Due Process violation under the Eighth and Fourteenth Amendments pursuant to § 1983. (*Id.* ¶¶ 52–57.)

Count III: "Custom, Practice, or Policy" of violating constitutional rights under § 1983. (*Id.* ¶¶ 58–61.)

Count IV: Cruel and Unusual Punishment under the Eighth and Fourteenth Amendments. (*Id.* ¶¶ 62–66.)

Count V: Medical Negligence, Negligent Hiring, Training, and Credentialing. (*Id.* ¶¶ 67–72.)

Count VI: Medical Negligence. (*Id.* ¶¶ 73–77.)

Count VII: Negligence, Negligent Staffing, Training, Supervision, and Hiring. (*Id.* ¶¶ 78–83.)

Count VIII: Negligence Per Se. (*Id.* ¶¶ 84–87.)

Count IX: Punitive Damages. (*Id.* ¶¶ 88–91.)

Through his attorney, Augustine M. Rodriguez, Jr., Gatlin filed a Complaint in New Mexico state court on January 30, 2020. (*See* Compl. at 1.) He took no action over the next 12 months, and on January 25, 2021, the state court dismissed the lawsuit due to lack of prosecution. *See Gatlin v. CoreCivic Inc.*, D-202-CV-2020-00759, Dism. Order for Lack of Prosecution (N.M. 2d Jud. Dist. Jan. 25, 2021). (*See also* Doc. 2-A at 19.) The order provided that "any party may move for reinstatement" within 30 days. (*See* Doc. 2-A at 19.) Gatlin filed a Motion to Reinstate on March 30, 2021. (*See id.* at 20.) He explained that he had "been released from custody and is

ready to move the case forward and officially serve the Defendants." (*Id.*) Gatlin served Centurion on June 22, 2021, and CoreCivic on June 23, 2021.[2] (*See* Docs. 3 at 3; 4 at 2; 9 at 2; 10 at 3.) Centurion removed the matter to this Court on July 22, 2021. (Doc. 1.)

Gatlin filed, pro se, a second lawsuit in state court on March 20, 2020, naming the New Mexico Department of Corrections (NMCD) and CoreCivic as defendants. *See Gatlin v. N.M. Dep't of Corr.*, D-2020-CV-2020-002218 (N.M. 2d Jud. Dist.). CoreCivic removed the lawsuit to this Court on August 27, 2020. *See Gatlin v. N.M. Dep't of Corr.* ("*Gatlin II*"), 20-cv-00865 JCH/LF (D.N.M. Aug. 27, 2020). In his pro se complaint, Gatlin alleges that the defendants violated his constitutional rights by operating the facility above maximum capacity, resulting in unsanitary living conditions. *See Gatlin II*, Doc. 1-1 at 3 (D.N.M. Aug. 27, 2020). Gatlin mentioned that he had suffered multiple staph infections and complained of "[t]he same menu meals . . . for over [three] years." *Id.*

Rodriguez filed a notice of appearance in *Gatlin II* in March 2021. *See id.*, Notice of Appearance (D.N.M. Mar. 30, 2021). Shortly thereafter, United States Magistrate Judge Laura Fashing entered an order that read:

> Recognizing that a pro se party may not have the training to provide an adequate complaint, the Court will give counsel an opportunity to amend the complaint. . . . [P]laintiff will have through May 3, 2021, to file an amended complaint. If [he] does not file an amended complaint, the original complaint filed by Mr. Gatlin in state court will remain the operative complaint going forward, and any claims on unserved defendants will be subject to dismissal for failure to prosecute.

*Id.*, Order to File Am. Compl., at *1–2 (D.N.M. Apr. 2, 2021). Rodriguez did not file an amended complaint. *See id.*, Order (D.N.M. May 4, 2021). He served a copy of the summons and the pro se complaint on the NMCD on June 22, 2021, after Judge Fashing entered a second order setting a

---

[2] Neither Defendant submits evidence to show the dates of service, but Gatlin asserts in his response briefs that he served Defendants on June 23, 2021. (*See* Docs. 9 at 2; 10 at 3.)

4

deadline for service in order to avoid dismissal . . . ." *See id.*

Centurion and CoreCivic now move to dismiss this lawsuit. Both contend that dismissal is warranted based on insufficient service of process. (Docs. 3–4.) CoreCivic also moves to dismiss on the basis that Gatlin fails to state a claim for relief. (*See* Doc. 4 at 3.)

## II.   Legal Standards

### A.   Motions to Dismiss under Rule 12(b)(5)

"Federal Rule of Civil Procedure 12(b)(5) authorizes dismissal of a lawsuit for insufficient service of process." *Exec. Consulting, Inc. v. Kilmer*, 931 F. Supp. 2d 1139, 1140 (D.N.M. 2013). "In determining the validity of service before removal, a federal court must apply the law of the state under which the service was made." *Id.* (quoting *Johnson v. N.T.I., a Div. of Colo. Springs Circuits*, 898 F. Supp. 762, 765 (D. Colo. 1995)). "Consequently, this Court will evaluate service here under New Mexico law, which holds that 'a court lacks jurisdiction to pronounce judgment over a defendant or respondent unless that defendant or respondent has been properly summoned into court.'" *Id.* (quoting *Trujillo v. Goodwin*, 116 P.3d 839, 840 (N.M. Ct. App. 2005)). "The plaintiff bears the burden of establishing the validity of service." *Id.* (citing *Fed. Deposit Ins. Corp. v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir. 1992)).

### B.   Motions to Dismiss under Rule 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Emps.' Ret. Sys. of R.I. v. Williams Cos.*, 889 F.3d 1153, 1161 (10th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quotation omitted). The Court will "accept as true 'all well-pleaded factual allegations in a

complaint and view these allegations in the light most favorable to the plaintiff.'" *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013) (quotation omitted).

### III. Gatlin did not use reasonable diligence in serving Defendants.

"The basic rule in New Mexico is that all parties to an action must be actually or constructively served within a period of time that includes the statute of limitations period plus a reasonable time for service of process." *Romero v. Bachicha*, 28 P.3d 1151, 1156 (N.M. Ct. App. 2001) (citations omitted); *see also* NMRA, Rule 1-004(C).[3] "In considering a motion relating to due diligence under Rule 1–004[(C)(2)], the district court is to exercise its discretion in determining whether delay demonstrates a lack of due diligence and whether the delay warrants dismissal of the complaint." *Martinez v. Segovia*, 62 P.3d 331, 338 (N.M. Ct. App. 2003) (citing *Graubard v. Balcor Co.*, 999 P.2d 434, 437 (N.M. Ct. App. 2000)). Although the parties do not discuss the issue, it appears that a three-year statute of limitations applies to all Gatlin's claims. *See Mondragon v. Thompson*, 519 F.3d 1078, 1081 (10th Cir. 2008) (noting that "[t]he statute of limitations for § 1983 claims in New Mexico is three years"); *Nowell v. Medtronic Inc.*, 372 F. Supp. 3d 1166, 1175 (D.N.M. 2019), *aff'd*, No. 19-2073, 2021 WL 4979300 (10th Cir. Oct. 27, 2021) (a three-year statute of limitations governs negligence claims under N.M. Stat. Ann. § 37-1-8); *Meza v. Topalovski*, 268 P.3d 1284, 1287 (N.M. Ct. App. 2012) (the statute of limitations for medical negligence claims is three years under N.M. Stat. Ann. § 41-5-13). Assuming the statute of limitations began to run on August 17, 2017, the date Gatlin filed his final grievance, it expired in August 2020. Thus, Gatlin timely filed his Complaint. Defendants argue, though, that Gatlin

---

[3] Rule 1-004(C) provides that "[s]ervice of process shall be made with reasonable diligence, and the original summons with proof of service shall be filed with the court in accordance with the provisions of Paragraph L of this rule." It does not appear from the state court docket that Gatlin complied with the portion of Rule 1-004(C) requiring the party to file proof of service. *See Gatlin v. CoreCivic Inc.*, D-202-CV-2020-00759 (N.M. 2d Jud. Dist.).

failed to serve process on them with reasonable diligence after he filed his Complaint. (*See* Docs. 3 at 7–9; 4 at 2–3.)

In analyzing diligence, courts "apply a standard of objective reasonableness . . . to consider the totality of the circumstances and to weigh the actions taken by [the plaintiff] to obtain service against the prejudice to the [defendant] resulting from the delay of service." *Martinez*, 62 P.3d at 337–38. Here, Gatlin, through his attorney, filed his Complaint in January 2020. He then took no action for over a year. The state court dismissed his Complaint on January 25, 2021, for lack of prosecution. The order of dismissal gave Gatlin 30 days to file a motion to reinstate. Gatlin failed to comply with that deadline, instead filing his motion 65 days later, on March 30, 2021. Gatlin stated in his motion that he had "been released from custody and [was] ready to move the case forward and officially serve the Defendants." (Doc. 2-A at 20.) Despite this statement, Gatlin took almost three *more* months to serve Centurion and CoreCivic. Approximately ten months passed from the time the statute of limitations ran to the time Gatlin served Defendants.

Centurion contends that Gatlin's excuse—that he was incarcerated—is insufficient to justify the delay. (Doc. 3 at 7–8.) Centurion compares this case to *Romero*, where the plaintiff waited over a year to serve the defendants and blamed the delay in part on the fact that he was investigating a medical malpractice claim. 28 P.3d at 1153, 1157. The New Mexico Court of Appeals found that the plaintiff failed to exercise due diligence in serving the defendant. *Id.* at 1157. Centurion argues that the delay here also reflects a lack of diligence, as individuals regularly litigate lawsuits while incarcerated. (Doc. 11 at 4 n.2.) The Court agrees and notes that Gatlin filed a second lawsuit pro se while he was incarcerated, which evidences his ability to participate in legal proceedings while at the NNMCC.

Rodriguez responds that he had difficulty communicating with Gatlin due to the COVID-

19 pandemic. (*See* Doc. 9 at 1.) Although the Court sympathizes with the complications COVID-19 has caused attorneys and their incarcerated clients, the pandemic does not fully excuse the 17-month delay in this case. First, the New Mexico Governor did not declare a pandemic-related state of emergency until mid-March 2020.[4] Rodriguez fails to explain why he could not communicate with Gatlin or serve the Defendants in the weeks immediately after he filed the Complaint. Second, although the pandemic created communications difficulties, Rodriguez presents no evidence to support a finding that he had *no* opportunities to communicate with Gatlin in the more than 14 months between the time he filed the Complaint and the time he moved to reinstate the lawsuit. In fact, when Gatlin moved to reinstate the state lawsuit in March 2021, he did not blame his failure to prosecute on the pandemic or on lack of communication. Rather, he simply stated that he had "been released from custody and is ready to move the case forward . . . ." (Doc. 2-A at 22.) Finally, Rodriguez does not explain why he waited approximately three months after he filed the motion to reinstate to serve Defendants. Neither the pandemic nor Gatlin's incarceration provide an excuse for this additional delay.

Rodriguez also blames the delay on confusion between this lawsuit and *Gatlin II*. (Doc. 9 at 1.) Rodriguez states that he "thought that the complaint that had been removed" in *Gatlin II* "was the complaint that counsel had filed . . . ." (*Id.* at 2.) Any confusion could have been alleviated by reading the *Gatlin II* complaint. Because *Gatlin II* was filed pro se, there is no evidence that Rodriguez even had notice that it had been filed or removed. In fact, he did not enter an appearance in *Gatlin II* until March 30, 2021. He filed a motion to reinstate this matter in state court on the same day. At that point, he had the ability to access the complaint in *Gatlin II*, a case involving a

---

[4] *See* Executive Order 2020-004, available at https://www.governor.state.nm.us/wp-content/uploads/2020/03/3_24_PHO_1.pdf (Mar. 11, 2020).

completely unrelated issue and a defendant who is not named in this matter. Moreover, days after he entered his appearance, Judge Fashing entered an order that gave Rodriguez explicit notice that *Gatlin II* had been filed pro se and giving him an opportunity to submit an amended complaint. Rodriguez's failure to read the documents in *Gatlin II* or take advantage of the Court's order is antithetical to a finding that he was reasonably diligent.

Centurion argues that the delay in service prejudiced it. (Doc. 3 at 8–9.) It contends that the delay "robbed Centurion of the best evidence from witnesses[,]" as the memories of staff involved in this incident will have faded. (*Id.* at 8.) "Here, many of the providers who saw [Gatlin] will have had thousands, and perhaps tens of thousands, of patient interactions" in the intervening years. (*Id.* at 9.) Moreover, "Centurion is not the custodian of [NNMCC] inmate medical records" and "cannot simply go look up [Gatlin's] medical records and determine whether his Complaint has any basis in fact and what the defenses to the Complaint might be." (*Id.* at 8.) Without "the right to discovery and the subpoena power" afforded by being an active participant in this lawsuit, Centurion has no legal right to gather certain information that can help it defend against Gatlin's claims. (*See id.*) These same concerns of prejudice apply equally to CoreCivic. Gatlin does not dispute the claims of prejudice but only states that his "delay in service is excusable because of the hardships introduced by both [his] incarceration and the COVID-19 pandemic limitations." (Doc. 9 at 6.) The Court does not agree. Because Gatlin did not exercise due diligence in serving Defendants, the Court finds that the motions to dismiss for insufficient service of process should be granted.

**IV.    Gatlin fails to state any cognizable federal claims.**

Alternatively, CoreCivic moves to dismiss based on Gatlin's failure to state any cognizable claims. (*See* Doc. 4.) The Court agrees that Gatlin's Complaint is vague and conclusory, with

insufficient factual allegations to support any federal claims for relief.[5] Reading Gatlin's Complaint generously, it appears that he intends to assert claims under 42 U.S.C. § 1983 on the basis that his rights have been violated by alleged inadequate medical care and cruel and unusual punishment. Because the allegations in Counts I through IV are largely duplicative, the Court will analyze them together.

Gatlin "appears to be attempting to hold private corporations Centurion LLC and CoreCivic vicariously liable for their employees' actions under 42 U.S.C. § 1983." *See Quintana v. CoreCivic (C.C.A.)*, 504 F. Supp. 3d 1224, 1236 (D.N.M. 2020). "Where, as in this case, a corporate entity is performing the actions typically performed by a state or municipality, like operating a prison, that corporate entity can be sued under § 1983." *Id.* (citing *Richardson v. McKnight*, 521 U.S. 399, 413 (1997); *Smith v. Cochran*, 339 F.3d 1205, 1215–16 (10th Cir. 2003)). "To succeed in a § 1983 action against a corporate entity, however, the plaintiff must prove that the corporate employee or agent committed a constitutional violation, and that the violation was a direct result of some policy or custom of the corporation." *Id.* (citing *Myers v. Okla. Cnty. Bd. of Cnty. Comm'r*s, 151 F.3d 1313, 1316 (10th Cir. 1998); *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 690–95 (1978)) (subsequent citations omitted).

The factual allegations here "are insufficient to show that any employee individually engaged in conduct that violated a constitutional right." *See id.* For example, to demonstrate a claim for inadequate medical care, he must show that someone "acted with 'deliberate indifference to [his] serious medical needs.'" *Gatlin v. Shannon*, No. CV 09-0906 LH/CG, 2011 WL 13291097,

---

[5] Centurion removed this lawsuit under 28 U.S.C. § 1331, as Gatlin alleged violations of his rights under 42 U.S.C. § 1983. (*See* Doc. 1 at 2.) Were the Court not dismissing the Complaint in full due to Gatlin's insufficient service of process, it would grant dismissal of the federal claims and decline to exercise supplemental jurisdiction over his state law claims.

at *4 (D.N.M. Mar. 1, 2011) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). This analysis is two-pronged: an objective component that is met if the inmate can show serious medical needs, *Sparks v. Singh*, 690 F. App'x 598, 603–04 (10th Cir. 2017); and a subjective component that "requires the plaintiff to present evidence of the prison official's culpable state of mind[,]" *id.* at 604 (quoting *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005)). Even if Gatlin's vague allegations of a broken foot were sufficient to show a serious medical need, he has not alleged facts to show any official's deliberate culpable state of mind. Gatlin "must show 'that the defendants knew he faced a substantial risk of harm and disregarded that risk[;] . . . the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Gatlin*, 2011 WL 13291097, at *5 (quoting *Martinez v. Beggs*, 563 F.3d 1082, 1089 (10th Cir. 2009)). Gatlin has not alleged that anyone was aware of a substantial risk of serious harm and disregarded the risk.

Moreover, he has not alleged facts to show that either Defendant maintained a formal or informal policy or custom that caused a violation. "Pleading a . . . policy, custom, or practice is like pleading the breach element of negligence—which is also ultimately a question of fact for the jury." *Griego v. City of Albuquerque*, 100 F. Supp. 3d 1192, 1213 (D.N.M. 2015). "The plaintiff cannot simply allege that there is a policy in place, but, rather, must plead facts that, if true, would give rise to a plausible inference that such a policy exists." *Id.* "With formal or written policies, satisfying this pleading standard is easy; the plaintiff can simply allege what the policy is and where it is codified." *Id.* Gatlin does not discuss a written policy regarding the medical treatment of inmates. (*See* Compl.) To make allegations sufficient to show an informal policy, custom, or practice,

11

> the plaintiff can plead either a pattern of multiple similar instances of misconduct—no set number is required, and the more unique the misconduct is, and the more similar the incidents are to one another, the smaller the required number will be to render the alleged policy plausible—or use other evidence, such as a police officers' statements attesting to the policy's existence.

*Griego*, 100 F. Supp. 3d at 1213. Gatlin does not plead multiple similar instances of a failure to provide medical treatment. Without additional, specific supporting facts, his vague allegations of an undefined custom or policy are insufficient to show an informal practice that will withstand a motion to dismiss.[6] In sum, the Court finds that Gatlin fails to state any cognizable federal claim.[7]

**THEREFORE,**

**IT IS ORDERED** that Centurion's Motion to Dismiss for Insufficient Service of Process (Doc. 3) and CoreCivic's Motion to Dismiss (Doc. 4) are **GRANTED** and this lawsuit is dismissed.

_____
ROBERT C. BRACK
SENIOR U.S. DISTRICT JUDGE

---

[6] CoreCivic also asserts that "because the Eighth Amendment provides an explicit textual source for [Gatlin's] claims" of inadequate medical care and cruel and unusual punishment, his claims must "be dismissed to the extent [they are] brought under the Fourteenth Amendment." (*See* Doc. 4 at 4.) The Court agrees. Coincidentally, Gatlin faced this same issue in a case he filed pro se in 2011. *See Gatlin v. Shannon*, No. CV 09-0906 LH/CG, 2011 WL 13291097 (D.N.M. Mar. 1, 2011). There, Gatlin claimed that the physician at a different detention center provided inadequate medical care, resulting in pain and injuries. *Id.* at *1. He asserted a claim for cruel and unusual punishment under the Eighth and Fourteenth Amendments. *Id.* at *4 & n.6. The Court construed his claims under the Eighth Amendment only, "since the denial of medical care in a prison context directly implicates the Eighth Amendment's guarantee against cruel and unusual punishment." *Id.* at *4 n.6 (citing *Albright v. Oliver*, 510 U.S. 266, 273 (1994) ("Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims."); *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001)). The same is true today.

[7] Gatlin mentions a desire to amend but fails to file a motion in accordance with D.N.M. LR-Civ. 15.1. (*See* Doc. 10 at 15.) Any amendment, however, would not cure the prejudice to Defendants from Gatlin's failure to use reasonable diligence.